FILED
2022 Mar-28  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| PATRICIA DEERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-00943-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER
## AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Patricia Deerman appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") on her claims for benefits, based on her mood disorders, anxiety, and autism.  Doc. 1; Doc. 11 at 1.  Plaintiff Deerman applied for supplemental security income (SSI) and children's disability benefits, with an alleged onset date of December 31, 2015 (Doc. 8-6 at 4), and the Commissioner denied her claim.  Doc. 8-3 at 1–4, 18–40.

Pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to magistrate judge jurisdiction.  Doc. 9.  After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

1

## ISSUES FOR REVIEW

In this appeal, Plaintiff Deerman argues that the court should reverse the Commissioner's decision for four reasons:  (1) the Administrative Law Judge (ALJ) failed to give proper weight to the testimony of Plaintiff Deerman's mother, Lisa Deerman; (2) the ALJ failed to give proper weight to the opinion of Deerman's examining psychologist, Dr. June Nichols; (3) the ALJ's decision was not supported by substantial evidence; and (4) the ALJ erred in determining that Deerman's impairments did not meet "Listing 12.04" and "Listing 12.06."[1]  Doc. 11; Doc. 15.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated

---

[1] For ease of review, the court presents these issues in a sequence that is different from Deerman's briefing.

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.
§ 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled. The ALJ must determine the following:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    if not, whether the claimant has a severe impairment or combination of impairments;

(3)    if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)    if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and

(5)    if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."

3

*Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner makes that showing, the burden then shifts back to the claimant to show that he cannot perform those jobs.  *Id.*  So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant.  *Id.*

**STANDARD OF REVIEW**

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act.  The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards."  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.**   With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's

4

decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (similar).

**B.** With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

## BACKGROUND

### A.    Procedural background

On November 30, 2017, Plaintiff Deerman applied for children's insurance benefits based on disability under Title II of the Social Security Act, and for SSI

benefits under Title XVI of the Social Security Act.[2]  Doc. 8-6 at 4.  In her application, Deerman alleged that she became disabled on December 31, 2015.  Doc. 8-6 at 4.

On February 27, 2018, the SSA initially denied Deerman's children's disability claim (Doc. 8-4 at 33; Doc. 8-5 at 5–9), and her SSI claim (Doc. 8-4 at 32; Doc. 8-5 at 10–14).

The SSA granted Deerman's request for a hearing (Doc. 8-5 at 18–20); and, on September 19, 2019, a hearing was held before an ALJ (Doc. 8-5 at 42–47; Doc. 8-3 at 47–76).  Plaintiff Deerman's mother—Lisa Deerman—appeared as a witness and testified at the hearing.  Doc. 8-3 at 47, 62–70.  A vocational expert or "VE"—Diana L. Kizer—also appeared and testified at the hearing.  Doc. 8-3 at 47, 70–76.

On October 31, 2019, the ALJ issued an unfavorable decision, finding that Deerman was not disabled under the Social Security Act.  Doc. 8-3 at 18–40.

On December 30, 2019, Deerman appealed that decision through counsel.

---

[2] "The Social Security Act provides disability insurance benefits for a disabled adult child based on the earnings record of an insured person who is entitled to old-age or disability benefits or has died a fully or currently insured individual." *Mainville v. Commissioner of Soc. Sec.*, No. 6:18-cv-482-Orl-41LRH, 2019 U.S. Dist. LEXIS 119887, at *1 (M.D. Fla. July 2, 2019) (citing 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)).  "In order to qualify for child insurance benefits as a disabled adult, several criteria must be met.  As relevant here, if the claimant is over 18, the claimant must be unmarried and 'have a disability that began before [she] became 22 years old.'"  *Mainville*, 2019 U.S. Dist. LEXIS 119887, at *1 (citing 20 C.F.R. § 404.350(a)(1)–(5)).  In this case, Plaintiff Deerman was 19 years old when she applied for benefits.

Doc. 12-5 at 82–84.  On June 15, 2020, the Appeals Council denied Deerman's request for review, finding that there was "no reason under [its] rules to review the Administrative Law Judge's decision."  Doc. 8-3 at 2.

After the Appeals Council denied Deerman's request for review of the ALJ's decision (Doc. 8-3 at 2–5), that decision became final for purposes of judicial review. *See* 42 U.S.C. § 405(g).

## B.    Factual background, and the ALJ hearing

Deerman was born on January 22, 1998.  Doc. 8-7 at 18.  Deerman lives in Alabama with her mother and her son, who was three years old at the time of the ALJ hearing.  Doc. 8-3 at 52.  She graduated from high school in 2016.  Doc. 8-7 at 23.  In 2014, while she still was attending high school, Deerman worked for approximately three months at a Sonic fast-food restaurant.  Doc. 8-7 at 24, 33–34.

In her initial application for benefits, Deerman claimed that she became disabled on December 31, 2015 (Doc. 8-6 at 4; Doc. 8-7 at 22), and that she was unable to work because of problems with comprehension, weakness in her arms, anxiety, and depression (Doc. 8-7 at 22).  Deerman also stated that she quit her job because her assigned hours were too numerous and too late in the day to balance with her schoolwork.  Doc. 8-7 at 22.

In a work history report dated December 13, 2017, Deerman stated that at Sonic she had been assigned to prepare drinks, because she "was unable to count

money," and "unable to throw garbage in the can."  Doc. 8-7 at 34.  She stated that coworkers had to help her with lifting and carrying garbage cans and ice buckets. Doc. 8-7 at 34.

On December 15, 2017, Deerman submitted an adult function report, which she completed with the assistance of her mother, Lisa Deerman.  Doc. 8-7 at 41–48. Deerman reported that she lived with her mother and her young son, but that she was "never left alone with [her son].  Someone [was] always with [her]."  Doc. 8-7 at 41. Deerman reported that she took medication to help her sleep.  Doc. 8-7 at 42. Deerman stated that her mother had to help her with hygiene and self-care, including help with shaving, and making sure her hair was washed and rinsed well.  Doc. 8-7 at 42.  Deerman also stated that her mother helped her with using the toilet, and that she took "several baths a day because I can't clean myself good."  Doc. 8-7 at 42. Deerman stated that she attempts housework and chores, but struggles because she thinks she has cleaned, but things still are dirty.  Doc. 8-7 at 43.  Deerman stated that she does not drive, because her mind does not "keep up with my feet on the gas and brakes."  Doc. 8-7 at 44.  She stated that she shops with her mother once a week, but that she cannot count or manage money.  Doc. 8-7 at 44.  Deerman did state that she enjoys watching television, playing with her son, cleaning, and cooking.  Doc. 8-7 at 45.  Deerman reiterated that she "can't stay by [her]self at all."  Doc. 8-7 at 45. Deerman stated that, because of her condition, she has trouble with lifting, standing,

reaching, walking, sitting, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others.  Doc. 8-7 at 46.

Along with her medical records, Deerman submitted her individualized education program (IEP), which her school had created for her, and which had been in place from March 22, 2011, until Deerman's graduation in May 2016.  Doc. 8-7 at 2–17.

At the September 2019 ALJ hearing, Deerman testified that she can read menus at restaurants with some help, and that she has a Facebook account and uses the internet to find games for her son.  Doc. 8-3 at 54.  She testified that she has a driver's license and can recognize traffic signs.  Doc. 8-3 at 54.

Deerman testified that she cannot maintain a full-time job because she has "no strength in [her] arms and legs," that she cannot stand "for very long," and that she has "a hard time remembering."  Doc. 8-3 at 55.  Deerman testified that she cannot stand for long periods because her back, legs, and hands hurt, but that doctors have not determined what is causing these issues.  Doc. 8-3 at 55.  Deerman testified that she could only stand or sit for 15-to-20 minutes at a time, but that she is not prescribed any medication related to this condition (for pain, treatment, or otherwise).  Doc. 8-3 at 56–57.

Deerman also testified that she has trouble remembering "[e]verything"; but,

in response to questioning from the ALJ, she stated that she has difficulty remembering numbers.  Doc. 8-3 at 57.  Deerman testified that she remembers to feed her son and helps with cleaning him and changing his diapers.  Doc. 8-3 at 58.  Deerman testified that, when she goes shopping or to the doctor, her mother always goes with her.  Doc. 8-3 at 59.  She also testified that she is in charge of taking care of her son while her mother is at work, but that her mother's friends come check on her throughout the day.  Doc. 8-3 at 59–60.

Deerman testified that she would not be able to return to her job at Sonic because of the expectation that she work at a fast speed, and that she also would have trouble catching on at a new job—even if it were a simpler job that did not require her to learn new skills or to use her memory as much.  Doc. 8-3 at 60.  Deerman also testified that she was uncomfortable with her job at Sonic because she was not "a people person" and did not "like to talk to people."  Doc. 8-3 at 60.  Deerman testified that she has panic attacks "every other day."  Doc. 8-3 at 61.

Deerman further testified that she has tingling in her hands that causes her to drop things.  Doc. 8-3 at 61.  She testified that, due to swelling, she had to spend seven or eight hours per day with her legs propped at waist level or above.  Doc. 8-3 at 62.

As noted above, Plaintiff Deerman's mother—Lisa Deerman—also testified as a witness at the ALJ hearing.  Lisa Deerman testified that, while she is at work,

10

she checks on her daughter every two hours.  Doc. 8-3 at 63.  Lisa Deerman testified

that she provides guidance to Plaintiff Deerman on completing chores, and that it is

"like talking to a child."  Doc. 8-3 at 64.  Lisa Deerman testified that her daughter

has never managed her own finances and cannot count change.  Doc. 8-3 at 65.  Lisa

Deerman testified that she must help her daughter with using the bathroom and

cleaning herself, in part because her daughter is "weak in her arms."  Doc. 8-3 at 66.

Lisa Deerman testified that her daughter cannot engage generally in conversation

and avoids situations that require her to interact with other people.  Doc. 8-3 at 67.

Lisa Deerman testified that her daughter is not able to understand what she reads and

struggles to focus.  Doc. 8-3 at 68.

A vocational expert (or "VE"), Diana L. Kizer, also testified at the ALJ

hearing.  Doc. 8-3 at 70–76.  Kizer described Deerman's past work as a fountain

server as a light, medium as performed, unskilled job.  Doc. 8-3 at 70–71.  Kizer

testified that an individual with the same age, education, and work experience as

Deerman, who cannot work in a fast-paced environment, and who requires regular

and normal work breaks every two hours, could not perform Deerman's past job.

Doc. 8-3 at 70–72.  However, Kizer testified that the same hypothetical individual

could find jobs in the national economy.  Doc. 8-3 at 70–72.  Those jobs include

work as a cleaner or floor waxer.  Doc. 8-3 at 72.

In addition, Kizer testified that a similar hypothetical individual, who only

could perform 1-to-2 step tasks and engage in incidental contact with supervisors and the public, could find work as a floor waxer or industrial sweeper/cleaner.  Doc. 8-3 at 72.  Kizer testified that employers generally will allow an employee one absence per month, a fifteen-minute break in the morning and afternoon, a thirty-minute lunch, and for that employee to be off task 10-to-15 percent of the day.  Doc. 8-3 at 73.

### C.   The ALJ's decision

On October 31, 2019, the ALJ issued an unfavorable decision on Deerman's claims.  Doc. 8-3 at 18–40.  The ALJ found that Deerman had not reached age 22, as of her alleged onset date of December 31, 2015, and that Deerman had not engaged in substantial gainful activity since that alleged onset date.  Doc. 8-3 at 23.

At step two of the sequential analysis, the ALJ found that Deerman had severe impairments of depressive/bipolar disorder, anxiety/obsessive disorders, autism, and personality/impulse control disorders.  Doc. 8-3 at 23.  The ALJ also noted that Deerman alleged that her back hurts, that she cannot hold her arms up, and that she cannot sit or stand for more than 15-to-20 minutes at a time.  Doc. 8-3 at 24.

At step three, the ALJ found that Deerman did not have an impairment or combination of impairments that met the severity of the impairments in the SSA's "Listing of Impairments"—including "Listing 12.04," "Listing 12.06," "Listing

12.08," and "Listing 12.10." Doc. 8-3 at 24. But, at step four, the ALJ concluded that Deerman was unable to perform her past work as a fountain server, as actually or generally performed. Doc. 8-3 at 38.

The ALJ found that transferability of skills was not an issue in Deerman's case, because her past work was unskilled. Doc. 8-3 at 39. After considering Deerman's age, education, work experience, and "residual functional capacity" (RFC), the ALJ found that there were jobs in the national economy that Deerman could perform, even with her non-exertional limitations. Doc. 8-3 at 39.

Consequently, the ALJ determined that Deerman was not disabled under the Social Security Act. Doc. 8-3 at 39–40. Because the Appeals Council found no reason to review the ALJ's opinion, the ALJ's decision became the final decision of the Commissioner.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on the proper legal standards.

## I. The ALJ did not err in finding unpersuasive the testimony of Lisa Deerman, Plaintiff Deerman's mother.

The ALJ did not err in finding unpersuasive the testimony of Plaintiff Deerman's mother, Lisa Deerman. On appeal, Plaintiff Deerman argues that the ALJ "failed to give any credibility to [her] mother's testimony," that the ALJ "must

13

consider and evaluate the testimony of family," and that the ALJ "rejected [her] mother's testimony without any assessment and without a sufficient explanation." Doc. 11 at 24–25 (emphasis omitted).

But, contrary to those assertions, the ALJ *explicitly* considered Lisa Deerman's testimony and found it unpersuasive. Doc. 8-3 at 26–27, 37–38. The ALJ properly analyzed Lisa Deerman's testimony under the applicable regulations, and substantial evidence supported the ALJ's finding that her testimony was unpersuasive.

Under the applicable Social Security regulations, the ALJ "[is] not required to articulate how [the ALJ] considered evidence from nonmedical sources . . . ." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source," including testimony from the claimant and the claimant's family, "about any issue in [the disability] claim." 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4).

In this regard, the Eleventh Circuit has found that "[t]he testimony of family members is evidence of a claimant's subjective" allegations, but that, even when an ALJ "fails to make an explicit credibility determination as to a family member's testimony," the court "will not find error if the credibility determination was implicit in the rejection of the claimant's testimony." *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) (quotation marks omitted).

14

In this case, the ALJ considered Plaintiff Deerman's testimony and her mother's testimony, and then determined that the testimony was "not entirely consistent with the medical evidence and other evidence in the record." Doc. 8-3 at 27. The ALJ specifically summarized Deerman's testimony and her mother's testimony. Doc. 8-3 at 26–27. Thus, a review of the ALJ's decision demonstrates that the ALJ considered not only Deerman's testimony, but also her mother's testimony. *See id.*

Furthermore, the ALJ was not required to explicitly reject Lisa Deerman's testimony—which was duplicative of Plaintiff Deerman's testimony—because the ALJ found that Plaintiff Deerman's testimony was "not entirely consistent with the medical evidence." Doc. 8-3 at 27. The ALJ's explicit rejection of Plaintiff Deerman's testimony functioned to implicitly reject her mother's duplicative testimony. *See Osborn*, 194 F. App'x at 666 (finding that an ALJ's explicit credibility determination as to the plaintiff's testimony also impliedly rejected the testimony of the plaintiff's wife).

Moreover (and as noted above), while the ALJ may not have been required to "make an explicit credibility determination" regarding the testimony of Plaintiff Deerman's mother (*see Osborn*, 194 F. App'x at 666), the ALJ did exactly that. The ALJ explicitly considered and rejected as unpersuasive the testimony of Deerman's mother.

The ALJ identified multiple exhibits in the record that contradicted the testimony of Deerman's mother, including therapy notes, educational records, records from Deerman's inpatient psychiatric hospitalization, and other medical records. Doc. 8-3 at 37–38. For example, while Deerman's mother testified that Deerman needed her mother's assistance with toileting hygiene, the ALJ found that Deerman's school records contained no evidence that she needed assistance with toileting; instead, the school records stated that Deerman had good hygiene. Doc. 8-3 at 38. The ALJ also noted that, while Deerman's mother testified that Deerman's arms were too weak to wash her own hair, Deerman's medical records indicated that Deerman had normal muscle tone and bulk in her bilateral upper extremities. Doc. 8-3 at 38.

The ALJ fully considered and evaluated Lisa Deerman's testimony, as well as the related record evidence. A "reasonable person would accept" the evidence that the ALJ reviewed as "adequate to support [the] conclusion" that Lisa Deerman's testimony was unpersuasive. *See Crawford*, 363 F.3d at 1158. Consequently, substantial evidence supported the ALJ's finding regarding the testimony of Deerman's mother.

## II. The ALJ did not err in finding unpersuasive the opinion of Plaintiff Deerman's examining psychologist, Dr. June Nichols.

The ALJ did not err in finding unpersuasive the opinion of Dr. June Nichols, Plaintiff Deerman's examining psychologist. Deerman argues that the ALJ

16

improperly discounted the opinion of Dr. Nichols, who performed a psychological consultative examination on Deerman.  Doc. 11 at 25–27; Doc. 15 at 4–6.

On August 12, 2019, Dr. Nichols met with Deerman and completed a psychological examination and evaluation.  Doc. 8-9 at 184–88.  On the same day (August 12, 2019), Dr. Nichols also completed a mental health source statement. Doc. 8-9 at 189.

In her psychological evaluation (and summary), Dr. Nichols wrote that Deerman suffered from post-traumatic stress disorder, panic disorder, autism disorder, and mild intellectual disabilities.  Doc. 8-9 at 188.  Dr. Nichols noted that, during their meeting, Deerman was anxious and tearful but "congruent with thought processes."  Doc. 8-9 at 186.  Dr. Nichols described Deerman as a "neat and clean individual," who was "oriented to person, place, time, and situation," but noted that her "judgment and insight were considered poor."  Doc. 8-9 at 186.

Deerman reported her daily activities to Dr. Nichols, stating that she "plays with her son, eats something, bathes, watches cartoons with her son, and tries to clean up around the house."  Doc. 8-9 at 187.  Dr. Nichols noted that Deerman's mother handles all of Deerman's financial responsibilities.  Doc. 8-9 at 187.

Dr. Nichols administered the Asperger Syndrome Diagnostic Scale, and found the probability that Deerman had Asperger Syndrome was "[v]ery [l]ikely."  Doc.

8-9 at 187.  But Dr. Nichols noted that it was Deerman's mother who "responded to the questions," and not Deerman.  Doc. 8-9 at 187.

Dr. Nichols summarized her findings:  Deerman is able to manage basic self-care; and she is able to understand, remember, and carry out short, simple, and 1-to-2 step instructions; but she needs supervision.  Doc. 8-9 at 188.

In her summary, Dr. Nichols also stated that Deerman was "unable to maintain a regular job without missing more than 1-2 days per month," and that she was "unable to sustain an ordinary work routine without the need for special supervision."  Doc. 8-9 at 188.  Dr. Nichols stated that Deerman was "unable to maintain socially appropriate appearance, behavior, and other aspects of social interaction in the workplace."  Doc. 8-9 at 188.

In the ALJ's opinion, the ALJ found that Dr. Nichols' opinion was "neither supported by nor consistent with the other evidence in the record."  Doc. 8-3 at 36.  The ALJ found Dr. Nichols' opinion "regarding [Deerman's] inability to maintain attention and concentration unpersuasive."  Doc. 8-3 at 36.  The ALJ also found Dr. Nichols' "opinion that [Deerman] is unable to maintain a socially appropriate appearance, behavior, and other aspects of social interaction in the workplace unpersuasive when compared to objective evidence of the claimant's educational success."  Doc. 8-3 at 37.

In reaching these findings, the ALJ reviewed and summarized all of the medical evidence in the record.  Doc. 8-3 at 30–38.  Among other things, the ALJ reviewed Deerman's educational history, self reports, and her mother's testimony.  Doc. 8-3 at 26–28.  On the ALJ's findings that Dr. Nichols' opinion was inconsistent with the record as a whole, the ALJ pointed to Deerman's high school GPA, her test scores, psychiatric records, and the medical opinion of another doctor.  Doc. 8-3 at 37.  The ALJ also found that "Dr. Nichols did not articulate a reason why [Deerman] would miss one or two days of work per week or fifteen days of work out of thirty, but her own opinions are conflicting in that regard."  Doc. 8-3 at 36.  The ALJ further found that Dr. Nichols relied heavily on the statements of Deerman's mother "regarding [Deerman's] medical and educational history without supportive evidence."  Doc. 8-3 at 36.

On appeal, Deerman argues that the ALJ improperly substituted the ALJ's own judgment for that of Dr. Nichols (Doc. 11 at 26–27), and that the ALJ failed to provide "some measure of clarity" for why the ALJ gave Dr. Nichols' opinion little weight.  Doc. 11 at 27.

First, while an ALJ "may not make medical findings herself" (*Ybarra v. Commissioner of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016)), it is the role of an ALJ to resolve conflicting medical evidence (*see Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984)).

Here, the ALJ did not take on the role of a physician or improperly substitute the ALJ's own judgment for that of Dr. Nichols.  Instead, the ALJ reached the residual functional capacity (RFC) determination by completing an exhaustive review of all the evidence that Deerman presented, and by considering all the medical evidence in the record, including Dr. Nichols' opinion evidence.[3]  So Deerman's argument that the ALJ improperly substituted the ALJ's own judgment for that of Dr. Nichols' judgment fails.

Likewise, Deerman's argument that the ALJ failed to provide "some measure of clarity" for discounting Dr. Nichols' opinion also fails.  *See* Doc. 11 at 27. Deerman's argument rests on the premises that an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor," and that, "when the ALJ fails to state with at least some measure of clarity the grounds for his decision," the reviewing court cannot affirm "simply because some rationale might have supported the ALJ's conclusion."  *Winschel*, 631 F.3d at 1179 (citations and quotation marks omitted).

Importantly, the SSA has revised its regulations on the consideration of medical opinions.  Under the new regulations, for all applications filed on or after

---

[3] "Generally, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of examining physicians are given more weight than non-examining physicians."  *Baez v. Commissioner of Soc. Sec.*, 657 F. App'x 864, 868 (citing 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2)).

March 27, 2017 (like the application in this case), an ALJ must consider each medical opinion based on the following five factors:  (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing that the medical source has familiarity with other evidence or an understanding of the SSA's policies and evidentiary requirements.  20 C.F.R. §§ 404.1520c(c).  Indeed, Deerman recognizes that "[t]he new rules on medical opinions are applicable."  Doc. 15 at 6.

Supportability and consistency are the most important factors, and the ALJ must explain how the ALJ considered those factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may explain how the ALJ considered the other factors, but the ALJ is not required to do so.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ addressed the supportability and consistency factors and explained the reasons for the finding that Dr. Nichols' opinion "[wa]s neither supported by nor consistent with the other evidence in the record."  Doc. 8-3 at 36. As explained above, the ALJ found Dr. Nichols' opinion unpersuasive because it was inconsistent with Deerman's high school GPA, her test scores, her psychiatric records, and her medical records, among other things; and the ALJ explained that

the only evidence to support Dr. Nichols' opinion was information that Deerman's mother had provided.

A "reasonable person would accept" the evidence that the ALJ reviewed as "adequate to support [the] conclusion" that Dr. Nichols' opinion was unpersuasive. *See Crawford*, 363 F.3d at 1158. Consequently, substantial evidence supported the ALJ's finding.

## III.   Substantial evidence supported the ALJ's decision.

As explained above (*see* Parts I & II *supra*), substantial evidence supported the ALJ's decision. Plaintiff Deerman argues that the ALJ's decision was not based on substantial evidence because the ALJ discounted the testimony of Plaintiff Deerman's mother and the opinion of Dr. Nichols, and because the ALJ improperly relied on testimony from the vocational expert. Doc. 11 at 29–30; Doc. 15 at 8–9.

The ALJ did not err in finding that the testimony of Deerman's mother and the opinion of Dr. Nichols were unpersuasive. *See supra* Parts I & II.

Nor did the ALJ err in relying on testimony from the vocational expert. Deerman appears to argue that the ALJ's decision was not based on substantial evidence because the ALJ posed hypothetical questions to the vocational expert that did not account for all of the limitations that Deerman alleged. Deerman does not dispute that an ALJ can rely on a vocational expert's testimony in determining a claimant's functional capacity (RFC), and Deerman is correct that the ALJ must pose

hypothetical questions that include all of a claimant's functional limitations.  *See* Doc. 11 at 30; *Gordon v. Astrue*, 249 F. App'x 810, 812–13 (11th Cir. 2007) (citing *Vega v. Commissioner of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 2001)).

But an ALJ is not required to include in those hypothetical questions to the vocational expert any limitations that the ALJ properly rejected as unsupported by the record.  *See Crawford*, 363 F.3d at 1161.  If substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, then the ALJ need not include that limitation in a hypothetical question to the vocational expert. *Id.*

Here, the ALJ's hypothetical question to the vocational expert included all of the limitations listed in the ALJ's residual functional capacity (RFC) assessment.  As explained above, substantial evidence supported the ALJ's RFC determination, and Deerman has not shown that her limitations were more severe than those that the ALJ found.  Accordingly, the ALJ properly relied on the vocational expert's response to his hypothetical questions to determine that Deerman was not disabled.

## IV. Substantial evidence supported the ALJ's determination that Plaintiff Deerman's impairments did not meet or equal "Listing 12.04" or "Listing 12.06."

Substantial evidence supported the ALJ's determination that Plaintiff Deerman's impairments did not meet or equal "Listing 12.04" (depressive, bipolar, and related disorders) and "Listing 12.06" (anxiety and obsessive-compulsive

disorders).  In this regard, it is not clear that Deerman has raised any additional issue for review.[4]  Regardless, the ALJ properly determined that Deerman's impairments did not meet or equal either "Listing."

Deerman argues in the reply brief that the initial brief "cited medical evidence for every element of the listing[s]" and "also provided a summary of the medical evidence."  Doc. 15 at 8; *see* Doc. 11 at 27–29; Doc. 15 at 6–8.  On the other hand, the Commissioner argues that "the entirety of Plaintiff's argument is nothing more than a quotation of Paragraph A and B criteria for both listings," and that Deerman "makes no attempt to explain how the record evidence shows she meets any of the listed criteria."  Doc. 14 at 7.

While the initial brief does include 12 pages of citations and quotations to medical records (Doc. 11 at 12–24), there is no meaningful argument or discussion of either Listing or those records.  Without more, the court cannot guess as to what conceivably may have been erroneous in the ALJ's findings or analysis on the Listings, because the court cannot "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the ALJ.  *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see, e.g.*, *Access Now, Inc. v. Southwest Airlines Co.*,

---

[4] *See, e.g.*, *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this court from] considering the issue on appeal."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (similar).

385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

In any event, the ALJ applied the proper legal standards on the Listings, and substantial evidence supported the ALJ's findings that Deerman did not have an impairment or combination of impairments that met or equaled Listing 12.04 or Listing 12.06.

As explained above, the ALJ evaluated Deerman's application for disability benefits using the five-step sequential process. The third step of that process required the ALJ to determine whether Deerman's impairment or combination of impairments met or equaled the severity of the specified impairments in the SSA's "Listing of Impairments."

At step three, if a claimant has an impairment that meets or equals a Listing in 20 C.F.R. Part 404, Subpart P, Appx. 1, and satisfies the applicable duration requirement, the ALJ must find that the claimant is disabled. *See* 20 C.F.R. § 404.1420(a)(4)(iii). To establish a presumption of disability based on a Listing, a claimant must show "a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted); *see also Sullivan v. Zebley*, 493 U.S. 521, 530–32 (1990)

(similar). In addition, a claimant's impairments must meet or equal *all* of the specified medical criteria in a particular listing for the claimant to be disabled at step three. *Sullivan*, 493 U.S. at 530–32. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531.

To meet either Listing 12.04 or Listing 12.06, a claimant must show that her mental impairments satisfy—in each Listing—the requirements of paragraph A, and the requirements of either paragraph B or paragraph C. 20 C.F.R. Part 404, Subpart P, Appx. 1, § 12.00A(2).

In this case, the ALJ found that Deerman did not meet these Listings because her mental impairments did not satisfy either the paragraph B or paragraph C criteria under either Listing. Doc. 8-3 at 24–25.[5]

Under both Listings 12.04 and Listing 12.06, a claimant's mental impairments satisfy the paragraph B criteria when the mental impairments "result in 'extreme' limitation of one, or 'marked' limitation of two, of four areas of mental functioning."

---

[5] As noted above, Deerman's briefing refers only to the paragraph A and paragraph B requirements under each Listing, but not the paragraph C requirements in either Listing. While the ALJ determined that Deerman did not meet the paragraph C requirements and the paragraph B requirements of either Listing 12.04 or Listing 12.06 (Doc. 8-3 at 25), the court will not discuss above in text the paragraph C requirements, because Deerman's briefing did not address those paragraph C requirements.

20 C.F.R. Part 404, Subpart P, Appx. 1, § 12.00A(2)(b).  The four areas of mental functioning are the abilities to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself.  *Id.*

A claimant has a "marked limitation" in a given area, where the claimant's ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited.  20 C.F.R. 404, Subpart P, Appx. 1, § 12.00F(2).  A claimant has an "extreme limitation" in a given area, where the claimant cannot function independently, appropriately, effectively, and on a sustained basis.  *Id.*

Here, the ALJ found that Deerman had the following limitations:  moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in her ability to concentrate, persist, or maintain pace; and mild limitations in her ability to adapt or manage herself.  Doc. 8-3 at 24.  Consequently, the ALJ found that Deerman did not have two "marked" limitations or one "extreme" limitation in the four areas of mental functioning, and that Deerman did not meet the requirements of paragraph B.

Substantial evidence supported the ALJ's determination on paragraph B of Listing 12.04 and Listing 12.06.  To reach those findings, the ALJ relied on Deerman's testimony that she cares for her son, plays games and reads with her son,

watches television, and uses the internet. Doc. 8-3 at 24–25. The ALJ also relied on Deerman's medical records, which described Deerman as "cooperative," and which stated that she had appropriate grooming and hygiene, and that Deerman drove a car. Doc. 8-3 at 24–25 (citing Exhibits 6F, 12F, 13F, 18F). The ALJ also reviewed Deerman's function report, which stated that she could care for her young son, shop with her mother, and spend time with friends and family. Doc. 8-3 at 24 (citing Exhibit 5E); *see also* Doc. 8-7 at 42, 44. A "reasonable person would accept" that evidence as "adequate" to support the ALJ's findings that Deerman did not have two "marked" limitations or one "extreme" limitation in the four areas of mental functioning. *See Crawford*, 363 F.3d at 1158. As a result, substantial evidence supported the ALJ's findings at step three.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the court **AFFIRMS** the Commissioner's decision. The court separately will enter final judgment.

**DONE** and **ORDERED** this March 28, 2022.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE